IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ZEB KING,
*Individually and on behalf of
all those similarly situated,*

        Plaintiff,              OPINION AND ORDER

v.

                                        18-cv-345-wmc

TREK TRAVEL, LLC,

        Defendant.

---

Plaintiff Zeb King sued his former employer, defendant Trek Travel, LLC, on behalf of himself and others similarly situated, seeking to recover unpaid overtime wages under federal and state law. The court previously conditionally certified a collective action pursuant to the Fair Labor Standards Act (the "FLSA"). (Dkt. #20.) The parties have now reached a settlement. Before the court are their joint stipulation for class certification (dkt. #40) and request for preliminary approval of class action settlement (dkt. #41). For the reasons below, the court will grant both motions. The court will hold a fairness hearing on December 12, 2019, at 1:00 p.m.

BACKGROUND

**A. Parties**

Members of the putative class worked for Trek Travel between May 10, 2016, and September 20, 2018. These sixty-one individuals worked as tour guides pursuant to one-year contracts.[1] Plaintiffs each claim to have worked in excess of forty hours in at least

---

[1] Plaintiffs' brief, citing Exhibit A, stated that the class contains sixty-two individuals; however,

one workweek, but were not paid overtime wages by defendant.

### B. Proposed Settlement

The parties agreed to a settlement agreement, which provided that defendant will establish a $425,000 settlement fund to resolve participating class members' claims, while denying any liability or wrongdoing. Each plaintiff will receive pro-rated settlement funds based on the value of their individual claims against defendant.

King provides allocations for each class member by calculating individual overtime hours that allegedly went unpaid and then adjusting certain individuals' allocations to recognize the risk of certain claims. Plaintiff made various adjustments based on ongoing legal issues that could alter the valuation, including: (1) reducing overtime value for workweeks outside the U.S. by 25%, based on the risk that Wisconsin law does not apply; (2) reducing FLSA opt-ins' calculations of overtime between May 2015 to May 2016 by 25%, to recognize plaintiff's burden to show that the defendant acted willfully in the third year; (3) increasing wages for work in the U.S. by 100% for FLSA opt-ins, to account for liquidated damages under the FLSA; and (4) withholding additional liquidated damages for work performed outside the U.S., to recognize plaintiff's burden to show "dilatory or unjust" action by defendant. (Pls.' Br. in Supp. of Prelim. Settlement Approval and Class Cert. (dkt. #42) 12; Proposed Initial Allocations (dkt. #43-1) Ex. A at 21–22.)

Additionally, class counsel will seek $140,250 in attorneys' fees -- representing one-third of the total settlement amount -- and King, as class representative, will seek approval

---

Exhibit A listed sixty-one individuals. (Pls.' Br. in Supp. of Prelim. Settlement Approval and Class Cert. (dkt. #42) 18; Proposed Initial Allocations (dkt. #43-1) Ex. A at 21–22.)

2

of an incentive award of $1,500. The settlement appoints class counsel as the settlement administrator, responsible for sending notice of the proposed settlement to the class members, calculating each class member's portion of the settlement fund and distributing settlement payments. The settlement agreement also includes the proposed notice to be sent to class members.

OPINION

### I. Class Certification (dkt. #40)

While the parties jointly stipulate to certifying the proposed class, certification is only appropriate following a rigorous analysis concerning whether the proposed class satisfies Federal Rule of Civil Procedure 23. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). The plaintiffs have the burden to show that a class should be certified. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Here, the proposed class consists of "[a]ll U.S. citizens who live in the U.S. and contracted with Trek Travel to work as Tour Guides and performed work as Tour Guides for Trek Travel at any time between May 10, 2016 and September 20, 2018 that exceeded 40 hours during any workweek." (Joint Stip. for Class Cert. (dkt. #40) ¶ 2.) This analysis encompasses a two-part test: (1) whether the proposed class meets all four prerequisites of Rule 23(a) to establish the class; and (2) whether the class can be maintained under one of the subsections of Rule 23(b). *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). The court will address the Rule 23(a) prerequisites before considering Rule 23(b)(3).

3

### A. Rule 23(a) Prerequisites

The prerequisites under Rule 23(a) -- numerosity, commonality, typicality and adequacy of representation -- determine whether a class may be established. Fed. R. Civ. P. 23(a). First, a class must be so numerous that it is reasonable to believe that joinder would be impracticable. *Arnold Chapman & Paldo Sign & Display Co. v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014). The Seventh Circuit has previously concluded that a forty-member class may be sufficient to satisfy the numerosity prerequisite. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Here, the putative class consists of sixty-one individuals. Heeding the Seventh Circuit's guidance, the court agrees that individually joining members of a class this large would be impractical. Accordingly, this prerequisite is met.

Second, a class must have questions of law or fact in common. Fed. R. Civ. P. 23(a)(2). A class must not just suffer violation of the same provision of law, but instead have a common injury whose resolution is "central to the validity of each one of the claims in one stroke." *Lacy v. Cook Cty., Ill.*, 897 F.3d 847, 865 (7th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Plaintiff identifies two common questions for all members of the putative class under Wisconsin law: (1) Were plaintiffs employees of Trek Travel? and (2) Did Trek Travel improperly fail to compensate plaintiffs for overtime work? (Pls.' Br. in Supp. of Prelim. Settlement Approval and Class Cert. (dkt. #42) 19.) Commonality exists because these questions are central to the resolution of each plaintiff's claim and can be answered "in one stroke" for all plaintiffs.

Third, typicality requires that the proposed class representative have claims that are

typical of the claims of the proposed class, such that his claim arises from the same event or course of conduct that gives rise to the claims of other class members. Fed. R. Civ. P. 23(a)(3); *Lacy*, 897 F.3d at 866 (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Typicality ensures that a plaintiff litigating his or her own self-interest will also advance the interests of the class. *Lacy*, 897 F.3d at 866 (citing *Oshana*, 472 F.3d at 514). This requirement is satisfied here because each plaintiff's claim -- including King's -- arises from defendant's alleged failure to pay overtime wages. As such, King's pursuit of his claim for failure to pay overtime wages would advance the interests of the class.

Fourth, adequacy requires the putative class representative and class counsel to fairly and adequately protect the interests of the proposed class. Fed. R. Civ. P. 23(a)(4). A class representative is not adequate if his interests conflict with those of other class members. *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). Here, Zeb King is adequate to represent the proposed class because he has the same interest as the other class members: he was allegedly injured and seeks compensation for the same alleged failure of defendant as the other class members. As to counsel's adequacy, plaintiff provides ten instances of counsel litigating similar wage and hour disputes before this court, demonstrating their qualification and experience to represent the proposed class. (Pls.' Br. in Supp. of Prelim. Settlement Approval and Class Cert. (dkt. #42) 21.) Since all the Rule 23(a) prerequisites are met, the court turns to superiority and predominance, which are required under Rule 23(b)(3).

B. Rule 23(b)(3) Requirements

The Rule 23(b)(3) requirements determine whether an established class may be

maintained. Fed. R. Civ. P. 23(b). Under Rule 23(b)(3), certification requires the class have "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *Id.* Relevant considerations include: class members' interest in individually litigating their claims, the extent and nature of class members' preexisting litigation regarding the controversy, the desirability of concentrating the litigation in a particular forum, and the difficulties of managing a class action. *Id.*

Predominance exists where a class representative's general allegations and common evidence establishes a prima facie case for the class. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1060 (7th Cir. 2016) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). The presence of individual questions does not prevent a common issue from predominating unless those individual questions overwhelm the questions common to the class. *Bell*, 800 F.3d at 378–79; *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013).

Here, all plaintiffs performed the same work for the defendant, and their claims turn on whether they were employees or independent contractors. While the amount of damages would depend on how much overtime each individual worked, the threshold question of their status while working for Trek Travel predominates and is common to all the plaintiffs. *See Costello*, 810 F.3d at 1060 (holding common question of whether plaintiffs were employees or independent contractors predominated in claim alleging failure to pay overtime wages).

The final requirement is that a class action is superior to other available methods

for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). This requirement is intended to ensure that a class action is the preferred method to "achieve economies of time, effort, and expense, and promote uniform decisions as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615 (1997)). Here, the plaintiffs all claim the same injury, which would be proven by largely the same evidence. Therefore, a single proceeding to determine whether Trek Travel denied overtime pay to all plaintiffs is superior when compared to the possibility of duplicative, individual adjudication of each plaintiff's claim. Likewise, plaintiffs have little incentive to litigate separately as the proposed settlement has detailed the awards for each class member.

Accordingly, since the Rule 23(a) and Rule 23(b)(3) are satisfied, class certification is granted. Plaintiff Zeb King is appointed class representative and Hawks Quindel, S.C., is appointed class counsel.

**II. Preliminary Settlement Approval (dkt. #41)[2]**

Settlement approval begins with a preliminary determination whether the proposed settlement is "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). Following preliminary approval, the second step is a fairness hearing to give class members an opportunity to be heard. *Id.*

A district court may approve a settlement that is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Considerations for court approval include the strength of the plaintiffs' case compared to the settlement offer; the complexity, length, and expense of further litigation; any opposition to the settlement; the opinion of competent counsel; and the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

The first and primary concern is the strength of the plaintiffs' case as compared to the proposed settlement. *Kaufman v. Am. Express Travel Related Servs.*, 877 F.3d 276, 284

---

[2] There is a circuit split as to whether all privately settled claims in an FLSA settlement need judicial approval. *Compare Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) ("[A] private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability.") *with Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (holding wage claims under the FLSA can be settled only under payment authorization from the Secretary of Labor or judicial approval of a stipulated settlement in a private action). While the Eighth Circuit recently refused to weigh in on whether judicial approval of a settlement of an FLSA claim is required, the court held that judicial approval is not required for attorneys' fees. *Barbee v. Big River Steel, LLC*, No. 18-2255, 2019 WL 2527594, at *2 (8th Cir. June 20, 2019). The Seventh Circuit, citing *Lynn's Food Stores*, refused to enforce wholly private settlements; however, the court also refused to prohibit private settlements altogether. *Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986). The *Walton* court also noted that judicial approval of settlements avoids subsequent validity challenges. *Id.* at 312. Therefore, in the interest of caution, the court will review whether the settlement in its entirety is fair, reasonable and adequate.

(7th Cir. 2017). This factor does not instruct district courts to resolve the merits of the controversy, but instead to establish whether the settlement "reasonably reflects the relative merits of the case." *Id.* at 285. A central issue in dispute is whether plaintiffs were employees of the defendant and not independent contractors. Should the litigation proceed, this is a question on which the plaintiffs bear the burden of proof. The settlement offers $425,000, with each member receiving a pro-rata amount based on the number of workweeks within the statutory period that they worked overtime. According to plaintiffs, the value of these claims before liquidated damages is $421,239.35, and accounting for "the risk of the different claims in the case" could increase the amount to $656,474.69.[3] Taking the higher valuation as the appropriate estimated recovery, the settlement permits plaintiffs to recover over sixty percent of their alleged damages. Considering the burden on plaintiffs to prevail on the employment question and then establish the overtime hours worked, the proposed settlement valuation is reasonable.

The complexity, length and expense of further litigation also weigh in favor of settling. Material issues ongoing in this case include: (1) whether plaintiffs are "employees" of the defendant; (2) whether Wisconsin law applies; and (3) whether the defendant's actions were willful, allowing a third year of damages.[4] Further litigation to resolve these

---

[3] The adjustments by plaintiffs due to ongoing legal issues, as described above, produced this value. The large increase resulted from increasing wages for work in the U.S. by 100%, which by plaintiffs' account is based on the courts' favor of liquidated damages. (Pls.' Br. in Supp. of Prelim. Settlement Approval and Class Cert. (dkt. #42) 12.)

[4] While the general statute of limitations on FLSA claims is two years after the cause of action occurred, claims that arise from willful violations carry a statute of limitations of three years. 20 U.S.C. § 255(a).

issues involves expense to both parties, while the proposed settlement gives class members a reasonable proportion of their alleged damages without the hardships of continuing litigation.  Therefore, this factor weighs in favor of the proposed settlement.

The court cannot yet consider opposition to this settlement because class members have not yet been notified of the proposed settlement.[5]  However, the proposed notice to class members clearly outlines how and why class members might want to object or be excluded from the settlement.  (*See* Proposed Notice (dkt. #43-1) Ex. B at 5 ("If you object to the Settlement . . . you must, on or before [DATE], file any such objection with the Court . . . and provide a copy of the objection to: Caitlin M. Madden, Hawks Quindel S.C., . . . .").)  Because there is a process for class members to oppose the settlement, at this stage this factor does not weigh against preliminarily approving the settlement.

Additionally, the settlement was reached through arm's-length negotiation facilitated by an experienced mediator.  To prepare for mediation, class counsel interviewed opt-in members of the collective action and reviewed substantial amounts of payroll data to create a damages model and determine a proper value for a class-wide resolution.  Therefore, the competency of class counsel and stage of these proceedings also favor preliminarily approving the settlement here.  Because the factors show that the parties' proposal is fair, reasonable and adequate, the court will approve the preliminary class action settlement and authorize the mailing of notice as detailed below.

---

[5] On occasion, and generally at final settlement approval, the Seventh Circuit has also considered the reaction of members of the class to the proposed settlement.  *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).  Because class members have not yet been notified of the proposed settlement, considering class members' reaction at this stage would be premature.

**III. Attorneys' Fees and Incentive Award**

The court will next address the validity of the named plaintiff's incentive award and counsel's request for attorneys' fees. The parties have agreed to allocate named plaintiff Zeb King a modest incentive award of $1,500. An incentive award can be explained as a form of compensation for the extra work a named plaintiff performs in class action lawsuits. *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 410 (7th Cir. 2000). The appropriate amount of an incentive award depends on "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 834 (7th Cir. 2018) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). The parties stipulate that the incentive award is reasonable for King's assistance to counsel with questions to prepare for discovery requests and mediation. Plaintiffs' counsel also acknowledges that King has provided key information in litigating this matter. (Zoeller Decl. (dkt. #43) ¶ 8.) This court agrees that based on King's assistance to counsel, which benefited the entire class, the incentive award of $1,500 appears reasonable, though the court will withhold approval until the fairness hearing.

As to attorneys' fees, the parties have proposed that class counsel be awarded one-third of the class settlement fund. Attorneys' fees should resemble an *ex ante* bargain between the attorneys and the class. *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 635 (7th Cir. 2011). In determining appropriate attorneys' fees, courts have discretion to use either the lodestar method or percentage method. *Americana Art China Co. v. Foxfire*

*Printing & Packaging*, 743 F.3d 243, 247 (7th Cir. 2014).

The lodestar method roughly estimates "the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The percentage method instead sets the attorneys' fees at a percentage of the recovered settlement fund, plus expenses and interest. *Camp Drug Store*, 897 F.3d at 828. While class counsel is relying on the percentage method, the court will scrutinize plaintiff counsel's application for attorneys' fees, including reference to counsel's hourly billing records and rates as a factor in determining an appropriate fee award. The court, therefore, will reserve on this request until class counsel's additional submissions and discussion during the final fairness hearing.

**IV. Proposed Notice**

Finally, as noted above, the court will authorize class counsel to send notice to members of the class. Notice to all members of a Rule 23(b)(3) certified class must include: (1) the nature of the action; (2) a definition of the certified class; (3) the class claims, issues, or defenses; (4) the option for class members to appear through counsel; (5) the option for class members to be excluded; (6) the time and manner to request exclusion; and (7) the effect of a class judgment on the members. Fed. R. Civ. P. 23(b)(2)(B). The proposed notice provides class members with information regarding the nature and claims of the action, a definition of the class, class members' option to appear through counsel and the availability and process for exclusion or objection. Furthermore, the option for class members to be excluded and the effect on members of a class judgment is detailed.

The court, however, notes a few minor modifications to the notice that class counsel should make before sending it out:

- On p. 1, fix the quotation marks around "Settlement Class" in the second bullet point to be smart quotes.

- On p.2, change reference to "Paragraph 9(b)" in the section on "Object" to "Paragraph 9(c).

- On p.4, ¶ 6, change "who <u>do</u> not return a consent form" to "who <u>did</u> not return an <u>FLSA</u> consent form."

- On p.5, delete the requirement that objectors must also send a copy of their objection to class counsel. Instead, the court will docket any objections it receives.

With these changes made, the court approves the proposed notice.[6]

ORDER

IT IS ORDERED that:

1) The stipulation for class certification (dkt. #40) is GRANTED. Plaintiff Zeb King is appointed class representative and Hawks Quindell, S.C., is appointed class counsel.

2) The unopposed motion for preliminary approval of class action settlement, an award of attorneys' fees and incentive award (dkt. #41) is GRANTED.

3) The proposed notice attached as Exhibit B (dkt. #43-1), with the modifications described above, is APPROVED and class counsel is AUTHORIZED to distribute it as provided in the parties' submissions.

---

[6] Class counsel should also ensure that all quotation marks and apostrophes are "smart" quotation marks and apostrophes for consistency's sake. *See* p.1 "Settlement Class" in the second bullet point; p.4 attorneys' under ¶ 5, last sentence.

4) The court approves the following settlement procedure and timeline:

   a. no later than September 30, 2019, class counsel will complete the notice program;

   b. class members shall have until 45 days after mailing of notice to submit a request to be excluded or any objections;

   c. no later than November 21, 2019, class counsel shall file a petition for attorneys' fees and costs;

   d. no later than November 27, 2019, class counsel shall provide the list of excluded class members to defendant's counsel;

   e. a motion for final approval and any briefing in support, as well as any objection to class counsel's fee petition are due on or before December 5, 2019; and

   f. the court will hold a fairness hearing on December 12, 2019 at 1:00 p.m.

Entered this 16th day of September, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge